UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RICHARD P. GAMBINO, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | |
| RADIANT ELECTRIC, LLC, | * | Civil Action No. 17-cv-10034-ADB |
| | * | |
| Defendant, | * | |
| | * | |
| and | * | |
| | * | |
| PEOPLE'S UNITED BANK, N.A., | * | |
| | * | |
| Trustee. | * | |

## MEMORANDUM AND ORDER ON
## AMENDED MOTION FOR DEFAULT JUDGMENT

BURROUGHS, D.J.

Plaintiffs filed this action on behalf of employee benefit funds seeking to recover unpaid contributions and other amounts due under the applicable employee benefit plans and collective bargaining agreement. Defendant Radiant Electric, LLC ("Radiant"), an employer participating in the plans, has defaulted, having failed to appear or otherwise defend in this action. [ECF No. 9]. Currently pending before the Court is Plaintiffs' amended motion for a default judgment against Radiant. [ECF No. 15]. For the following reasons, the motion is GRANTED.

I.  BACKGROUND

Following the entry of a default, "the facts alleged in the complaint are taken as true." Plasterers' and Cement Masons' Local 40 Pension Fund v. D & M Concrete Finishing, No. 12−256, 2013 WL 2432420, at *1 (D.R.I. June 4, 2013) (quoting Queally v. Estate of Hoviss, No. 10−002, 2011 WL 6026593, at *1 (D.R.I. Dec. 2, 2011)); see Franco v. Selective Ins. Co.,

184 F.3d 4, 9 n.3 (1st Cir. 1999) (defaulted party is "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated"). Accordingly, the following summary of facts is drawn from the Plaintiffs' complaint, with certain details sourced from the supplemental documentation submitted in support of the amended motion for additional context.

Plaintiffs are the administrators of employee welfare and pension benefit plans for the International Brotherhood of Electrical Workers Local 103 ("Union"), each of which meets the definition of a "multiemployer plan" under the Employee Retirement Income Security Act of 1974 ("ERISA").[1] [ECF No. 1 at ¶¶ 3−8, 11] ("Complaint"); [ECF No. 16 at 2]. Radiant and the Union are also parties to a collective bargaining agreement [ECF No. 1-2] ("CBA")[2] that requires Radiant to make monthly contributions to the Funds, based on the hours worked by Radiant's covered employees, and to deduct and remit working dues to the Union. Compl. ¶¶ 11−14. In August 2016, Plaintiffs engaged an independent firm to conduct an audit of Radiant for the period of January 1, 2013 through December 31, 2015. Id. ¶ 17. The auditor compared Radiant's remittance reports with its payroll and other internal records detailing the number of hours worked by Radiant's employees. [ECF No. 16-6 at 1−2]. The audit showed that Radiant

---

[1] Plaintiffs represent the following ERISA-regulated funds: the Heath Benefit Plan, Pension Fund, Deferred Income Fund, Joint Apprenticeship and Training Fund, and National Electrical Benefit Fund (the "Plaintiff Funds"). Compl. ¶ 8. The Plaintiff Funds also act as the collection agents for the following non-ERISA funds associated with the Union: the Management Cooperation Trust, National Electrical Industry Fund, Administrative Maintenance Fund, and National Labor Management Cooperation Committee (collectively with the Plaintiff Funds, the "Funds"). [ECF No. 16 at 8]; [ECF No. 16-1 at ¶ 3].

[2] In entering into the CBA, Radiant also agreed to be bound by the collection policy applicable to the Funds, a copy of which was provided to the Court with Plaintiffs' amended motion. See [ECF No. 16-2] ("Collection Policy"); CBA at § 4.9 (employer "shall be bound by rules and regulations promulgated by the Trustees of the [Funds] as regards [to] collection procedures, including but not limited to legal fees and interest charges").

underreported the number of hours worked and it consequently failed to remit working dues and make principal benefit contributions in the amount of $46,648.44. Compl. ¶¶ 17–18; [ECF No. 1-3 at 6].

On September 13, 2016, the auditor submitted its findings to Radiant, and, shortly thereafter, Plaintiffs sent a notice to Radiant, followed by a written demand, requesting payment of the amounts owed to the Funds. Compl. ¶¶ 19−20. Ultimately, Plaintiffs filed the instant complaint asserting two claims: violation of Section 515 of ERISA, 29 U.S.C. § 1145, for failing to make all contributions owed, and violation of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, for breaching the CBA. Id. ¶¶ 21–29.

On March 13, 2017, a proof of service was returned, showing that Radiant had been served at its headquarters in New Hampshire. [ECF No. 5]; see [ECF No. 18] (letter from Plaintiffs' counsel affirming proper service of process on Radiant). On April 4, 2017, the deadline expired for Radiant to respond to the Complaint. Plaintiffs then filed a motion for the entry of a default against Radiant pursuant to Fed. R. Civ. P. 55(a), and the clerk entered a default on June 15, 2017. [ECF No. 9]; see [ECF Nos. 12, 13] (return receipts following delivery to Radiant of the notice of default).

One month later, Plaintiffs moved for the entry of a default judgment pursuant to Fed. R. Civ. P. 55(b)(1). [ECF No. 10]. The Court scheduled a hearing on the motion and explained that because the damages sought did not constitute a sum certain, Plaintiffs' motion was not reviewable under Rule 55(b)(1). The Court stated that it would nevertheless consider the motion under Rule 55(b)(2). [ECF No. 14] (citing KPS & Assocs., Inc. v. Designs By FMC, Inc., 318 F.3d 1, 1920 (1st Cir. 2003)). On November 29, 2017, Plaintiffs filed an amended motion for a default judgment with supplemental briefing and documentation. [ECF Nos. 15, 16]. The Court

held the hearing on the amended motion on December 6, 2017. [ECF No. 17]. Radiant did not attend the hearing and has not appeared at any point in this action.

## II. DISCUSSION

### A. Jurisdiction

As an initial matter, the Court "has an affirmative duty to assure itself that it has jurisdiction over both the subject matter and the parties" before entering a default judgment. Plasterers' and Cement Masons' Local 40 Pension Fund v. Capital Curbing Corp., No. 09−236, 2010 WL 1424722, at *2 (D.R.I. Mar. 12, 2010), aff'd and adopted, 2010 WL 1376293 (D.R.I. Apr. 6, 2010). Because ERISA and LMRA are federal statutes, the Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331. Id.; see United Elec., Radio and Mach. Workers of America v. 163 Pleasant Street Corp., 960 F.2d 1080, 1085 (1st Cir. 1992) (citing 29 U.S.C. §§ 185(c), 1132(e)(1) as "establishing subject matter jurisdiction under LMRA and ERISA, respectively"). As to personal jurisdiction, "[a]ny district court in which a plaintiff brings an action under Title I of ERISA will have personal jurisdiction over the defendant, if the defendant is properly served and has sufficient minimum contacts with the United States." Capital Curbing Corp., 2010 WL 1424722, at *3 (quoting Central States, Southeast & Southwest Areas Pension Fund v. Phencorp Reinsurance Co., Inc., 440 F.3d 870, 875 (7th Cir. 2006)); see United Elec., 960 F.2d at 1085 (where the court has federal question subject matter jurisdiction, "the Constitution requires only that the defendant have the requisite 'minimum contacts' with the United States, rather than with the particular forum state (as would be required in a diversity case)"). "Furthermore, sufficient contacts exist whenever the defendant is served within the sovereign territory of the United States pursuant to a federal statute or civil rule." Univ. of Mass. Medical Ctr. v. C & M Corp., 16 F. Supp. 2d 110, 111 (D. Mass. 1998) (citing United Elec., 960

4

F.2d at 1085–86). "ERISA provides for nationwide service of process, and [Fed. R. Civ. P. 4(k)(1)(C)] constitutes the mechanism for exercising such extraterritorial service." Id. at 112. Here, a return of service was filed on March 23, 2017 and Plaintiffs' counsel subsequently affirmed by letter to the Court that Radiant was served with a summons and a copy of the Complaint. [ECF Nos. 5, 18]; see Blair v. City of Worcester, 522 F.3d 105, 111 (1st Cir. 2008) ("A return of service generally serves as *prima facie* evidence that service was validly performed."). "By virtue of the fact that [Radiant] was lawfully served within the United States pursuant to a federal statute, under the law of this circuit, this Court has personal jurisdiction over [Radiant]." C & M Corp., 16 F. Supp. 2d at 112 (citing United Elec., 960 F.2d at 1085–86). Thus, the Court has both subject matter jurisdiction and personal jurisdiction over this action.

### B. Liability and Damages

On a motion for a default judgment, the Court considers "all well-pleaded factual allegations as true . . . to determine whether [the complaint] alleges a cause of action." Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002). Here, Plaintiffs "have adequately pleaded that [Radiant's] failure to contribute to the Funds and to remit dues to [the Union] are violations of the [benefit plans] and CBA, and [are] thus violations of ERISA [and] the LMRA." D & M Concrete Finishing, 2013 WL 2432420, at *2. Because Radiant has not responded to the entry of a default against it, the entry of a default judgment is now appropriate. Id.

"While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof . . . ." KPS & Assocs., Inc., 318 F.3d at 19 (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)). In relevant part, ERISA provides that in an action to enforce an employer's obligations with respect to delinquent contributions, the Court shall

award:

> (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of . . . (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). "Similarly, liability for delinquent contributions to [non-ERISA plans] is found under the LMRA rather than ERISA." Finkel v. Detore Elec. Const. Co., Inc., No. 11–0814, 2012 WL 1077796, at *8 (E.D.N.Y. Mar. 6, 2012) (quoting Finkel v. INS Elec. Servs. Inc., No. 06−4862, 2008 WL 941482, at *5 (E.D.N.Y. Apr. 4, 2008)). Accordingly, Plaintiffs seek a default judgment in the amount of $104,639.23, comprised of the following:

$46,648.44 in principal benefit contributions and working dues for underreported hours from January 1, 2013 through December 31, 2015.

$27,412.56 in prejudgment interest on delinquent unpaid contributions through August 1, 2017.[3]

$22,359.86 pursuant to 29 U.S.C. § 1132(g)(2)(C)(i).[4]

$1,458.15 in special assessment of liquidated damages for late deferred income payments to the Deferred Income Fund.[5]

---

[3] With the exception of the Administrative Maintenance Fund and the National Labor Management Cooperation Committee, the Funds charge interest on delinquent contributions at a rate of 1.5% per month. Compl. ¶ 15. The Administrative Maintenance Fund charges interest at a rate of 1% per month and the National Labor Management Cooperation Committee charges interest at a rate of 10% per year. [ECF No. 16-1 at ¶¶ 4–6].

[4] Because Plaintiffs request this amount pursuant to a specific provision of ERISA, Plaintiffs' calculation properly excludes any interest owed to the non-ERISA funds. See [ECF No. 16 at 2]; [ECF No. 16-1 at ¶ 14].

[5] "The Funds . . . perform a once-per-year special assessment of liquidated damages for late payments to the Deferred Income Fund. This amount represents the amount that an individual participant would have earned had contributions been timely made to the Deferred Income

$2,973.80 in auditor's fees.[6]

$3,786.42 in attorneys' fees and costs.

[ECF No. 15].

In calculating damages, the Court may conduct a hearing but is not required to do so, particularly where the facts alleged, together with affidavits submitted by the moving party, adequately establish the amount of the default judgment. See In re The Home Restaurants, Inc., 285 F.3d 111, 114–15 (1st Cir. 2002) (district court did not abuse its discretion by entering default judgment without a hearing, where there was "no uncertainty about the amounts at issue," the pleadings contained "specific dollar figures," and the court requested and received affidavits in support of the default judgment). Here, Plaintiffs provided the Court with (1) the audit report, (2) a spreadsheet detailing the calculation of unpaid interest and liquidated damages owed to the Deferred Income Fund, (3) an affidavit of a senior manager at the audit firm concerning the procedures undertaken in reviewing Radiant's books and records and in compiling the results, (4) an affidavit of the chief financial officer of certain of the Funds extensively describing the damages calculations, (5) an affidavit of Plaintiffs' counsel with copies of billing records substantiating the requested attorneys' fees and costs, and (6) a copy of the auditor's invoice confirming the requested auditor's fees. Although these materials provided ample support for the relief sought, the Court nonetheless held a hearing on the amended motion to further ensure that each of the requested amounts was supported by adequate proof.

---

Fund." [ECF No. 16-1 at ¶ 7]; see [ECF No. 16-3] (spreadsheet detailing the calculation of the special assessment of liquidated damages); Collection Policy at Article 4.06 (employer is liable for its delinquent contributions to the Deferred Income Fund).
[6] According to the CBA and the Collection Policy, the audited employer bears the cost of the auditor's fees if the Funds file a lawsuit to collect delinquent contributions from that employer. See [ECF No. 16 at 7]; Collection Policy at Article 6.04(c)(4).

7

Upon consideration of the amended motion and accompanying materials described above, and following the hearing, the Court agrees that Plaintiffs are owed a total of $104,639.23, comprised of the amounts set forth in Plaintiffs' amended motion.

## III. CONCLUSION

Accordingly, the amended motion for a default judgment [ECF No. 15] is <u>GRANTED</u>. Default judgment shall hereby enter against Radiant in the amount of $104,639.23.

**SO ORDERED.**

Date: December 21, 2017 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE